UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**REPORT**
**and**

                              Plaintiff,     **RECOMMENDATION**

        v.
                                             **07-CV-818S(F)**

ONE 2004 LAND ROVER RANGE ROVER
VIN: SALME11464A175730 seized from
Douglas Turnage,
                              Defendant.


SANFER SPORTS CARS, INC.,

                              Claimant.


APPEARANCES:          KATHLEEN M. MEHLTRETTER
                      Acting United States Attorney
                      Attorney for the Plaintiff
                      WILLIAM J. KNAPP,
                      Assistant United States Attorney, of Counsel
                      138 Delaware Avenue
                      Buffalo, New York   14202

                      RICHARD J. DIAZ, ESQ.
                      Attorney for Claimant
                      3127 Ponce de Leon Boulevard
                      Coral Gables, Florida   33134


## JURISDICTION

        By order dated March 6, 2008, Hon. William M. Skretny referred this matter to the

undersigned, pursuant to 28 U.S.C. § 636(b)(1)(A)(B), for all pretrial matters.  The

matter is presently before the court on Plaintiff's motion to strike Claimant's claim and

answer, and for a default judgment of forfeiture filed March 14, 2008 (Doc. No. 20).

## BACKGROUND and FACTS[1]

By verified complaint, filed December 10, 2007, Plaintiff commenced this *in rem* action seeking forfeiture of one 2004 Land Rover Range Rover, VIN. No. SALME11464A175730 ("the Defendant Vehicle") pursuant to 21 U.S.C. § 881(a)(4) and (a)(6).  Complaint ¶ 1.  According to the criminal investigation leading to the seizure of the Defendant Vehicle, at the time of seizure the vehicle bore a Florida temporary registration number of Q159591, Complaint ¶ 3; it was then registered to Eduardo Delgado ("Delgado") of Miami, Florida, the prior owner, and the title holder was Denisha Green ("Green") of Buffalo, New York.  *Id.* ¶ 4.  The investigation also determined that Douglas Turnage ("Turnage") was involved in a narcotics trafficking conspiracy in Buffalo, and that Turnage, through Green, had purchased Defendant Vehicle on October 18, 2006 from Sanfer Sports Cars in Miami ("Sanfer") with cash proceeds from illegal narcotics transactions.  Complaint ¶ ¶ 14-16.  Using this cash, Green made a $21,260 down payment to Sanfer and later agreed to make additional installment payments as Defendant Vehicle's purchaser and title holder.  *Id.* ¶ 16.  Since Defendant Vehicle's seizure by agents of the U.S. Drug Enforcement Agency ("DEA") in Buffalo, New York, on July 19, 2007, based on Turnage's use to facilitate the narcotics trafficking conspiracy, it has remained in the custody of the United States Marshal's Service.  *Id.* ¶ 17.

On January 23, 2008, Sanfer filed a Verified Claim (Doc. No. 8) and on February 12, 2008, Sanfer, following Plaintiff's service of the Complaint by publication, filed an

---

[1] Taken from the papers and pleadings filed in this action.

answer to the Complaint (Doc. No. 13).

On March 14, 2008, Plaintiff filed the instant Motion to Strike the Claim filed by

Carlos Santisteban ("Santisteban") on behalf of Sanfer and Sanfer's answer, and for a

Judgment of Default pursuant to Rule G(5)(a)(i)(B), Rule G(8)(c)(i)(A) and (B), and (ii)(B)

of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions

("Rule G ___") ("Plaintiff's motion").  In support of Plaintiff's motion, Plaintiff filed the

Affidavit of William J. Knapp, Assistant United States Attorney, in Support of Motion to

Strike Claim and Answer and for a Default Judgment of Forfeiture (Doc. No. 20) ("Knapp

Affidavit") together with Exhibits 1-3 ("Plaintiff's Exh.(s) ___") and a Memorandum of Law

in Support of Plaintiff's Motion (Doc. No. 21).  On March 17, 2008, Plaintiff filed an

amended Memorandum of Law in Support of Plaintiff's Motion (Doc. No. 22) with

additional text and copies of two unpublished judicial opinions ("Plaintiff's

Memorandum").  Specifically, Plaintiff contends that as an unsecured general creditor,

Sanfer lacks standing to assert any claim to the Defendant Vehicle, and that Sanfer has

failed to adequately state its interest as required by Rule G(5)(a)(i)(B).  Plaintiff's motion

at 2.  Plaintiff further contends that the circumstances of the transfer of ownership of

Defendant Vehicle by Sanfer to Green constitutes violations of federal law including 31

U.S.C. § 3513(a) (requiring the filing of IRS Form 8300) and 18 U.S.C. § 1956 (money

laundering). *Id.*

On April 23, 2008, Sanfer filed its Response to Plaintiff's Motion (Doc. No. 28)

("Sanfer's Response") and the Affidavit of Carlos Santisteban, Sr. (Doc. No. 29)

("Santisteban Affidavit").  Plaintiff, on May 15, 2008, filed its Reply to Claimant Sanfer's

Response to Plaintiff's Motion (Doc. No. 30) ("Plaintiff's Reply") and attached a copy of a

3

Florida Certificate of Title for the Defendant Vehicle ("Plaintiff's Reply Attachment A") and a copy of a contract of sale for the Defendant Vehicle dated October 18, 2006 between Sanfer and Green ("Plaintiff's Reply Attachment B").

In Sanfer's Response, Sanfer contends that it has standing to recover the Defendant Vehicle based on Sanfer's status as a "licensed and bonded independent [auto] dealership" and the operation of Florida law as applied to the transaction under which Sanfer sold the Defendant Vehicle to Green prior to its seizure.  Sanfer Response ¶ 2.  Sanfer acquired Defendant Vehicle from Delgado in a trade-in and obtained an assignment of Delgado's title as well as a lien discharge from Delgado's lender.  Sanfer Response at 10.  Sanfer concedes that the transaction involved a down payment of $21,260 with the $31,824.35 balance of the purchase price to be paid by Green which Sanfer expected to be financed by Green.  *Id.* ¶ ¶ 23-24; Plaintiff's Response Attachment B.  Sanfer allowed Turnage to take delivery of Defendant Vehicle before Sanfer learned Green's check for the balance of the sale price would be dishonored.  Sanfer Response ¶ 19; Santisteban Affidavit ¶ 10.  Based on Green's subsequent money order payments toward the balance of the vehicle's purchase price, Sanfer did not seek repossession of Defendant Vehicle, Sanfer Response ¶ 26.  Sanfer decided, in reliance on such payments, not to file a lien against Defendant Vehicle by requesting the issuance of a title to the vehicle by the Florida Department of Motor Vehicles showing Green as the owner and Sanfer as lienholder.  *Id.* ¶ 29; Santisteban Affidavit ¶ 10.  Upon learning of the seizure of the Defendant Vehicle, as a result of the DEA's notice to Sanfer of seizure on August 9, 2007, Sanfer filed a "lien against" Defendant Vehicle by requesting issuance by the Florida Department of Motor Vehicles of a title transfer from Delgado,

the vehicle's prior owner, to Green showing Sanfer as the lienholder on the vehicle.  *Id.* ¶ 31; Plaintiff's motion Exh. 3.

In reply, Plaintiff points out that Sanfer's claim states it is based on Sanfer's assertion that Sanfer "has a legal and perfected lien against" Defendant Vehicle, Plaintiff's Reply ¶ 2, but alleges no other legal interest to support the claim to comply with Rule G(5)(a)(i)(B).  Sanfer does not dispute this description of its property interest in Defendant Vehicle as the basis for its claim.  Sanfer Reply ¶ 3; Sanfer Reply at 7.  Plaintiff also notes that Sanfer's answer asserts as affirmative defenses that Sanfer is an innocent owner within 18 U.S.C. § 983(d)(2)(A)(i) and § 983(d)(6)(A), and that as the vehicle's "rightful owner," Sanfer, on October 18, 2006, "recorded a lien on Defendant Vehicle."  Plaintiff's Reply ¶ 2 (quoting Sanfer's answer at 2).

Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion should be GRANTED.


## DISCUSSION

18 U.S.C. § 983(d)(6) requires that in order to have standing to claim return of seized property subject to forfeiture, a claimant must demonstrate an "ownership interest" in the property at the time of seizure.  As relevant, such interest includes a "lien," *id.*, but excludes an owner with "only a general, unsecured interest in . . . the property."  18 U.S.C. § 983(d)(6)(B)(i) ("§ 983(d)(6)(B)(i)").  State law determines whether the property interest of a claimant in seized property is sufficient to establish standing to contest a forfeiture of seized property.  *See United States of America v. $79,000 in Account Number 2168050/674990 at the Bank of New York*, 1996 WL

648934 *4 (S.D.N.Y. Nov. 7, 1996) (citing *United States v. One 1986 Volvo 750T,* 765

F.Supp. 90, 91 (S.D.N.Y. 1991)).   Under Florida law, a security interest in a motor

vehicle is perfected by the filing of the notice of lien and a subsequent notation of the lien

on the vehicle's title issued by the Florida Department of Motor Vehicles.   Plaintiff's

Memorandum at 6 (citing Florida Statutes, Title XXIII, Motor Vehicles, Chapter 319.27(1)

and (2)); Fla. Stat. Ann. § 319.27(1) and (2) (West 2009) ("the Florida statute").   The

Florida statute requires any lien against a motor vehicle to be noted on the title issued for

such vehicle and provides that such a lien is unenforceable unless notice of the lien is

noted on the face of the title which is effective when filed.   *Id.*   Although this requirement

does not apply in the case of a vehicle sold by a licensed dealer under a security

agreement, conditional bill of sale, chattel mortgage or similar instrument, *id.*, Sanfer

does not assert that its sale contract with Green constitutes such a form of a secured

transaction within the meaning of the Florida statute.[2]   Florida law also requires a

licensed dealer, like Sanfer, obtain an assignment of title or other evidence of ownership

before reselling a used vehicle or apply for title in its own name.   Fla. Stat. Ann. §

320.27(1)(c)2), (7).   It is undisputed that Sanfer did not attempt to establish its lien, in

accordance with Florida law until it learned of the vehicle's seizure.   Sanfer's Response ¶

29.

      As stated, title to Defendant Vehicle reflecting Sanfer's lien was issued by the

---

[2]   Sanfer maintains it paid off the balance of a loan on the vehicle to a lender to discharge the
lender's lien on the vehicle, which Delgado had traded in to Sanfer for another car, Sanfer Response at
13-14, and received "clear title" to the vehicle from the lender.   Sanfer Response at 10.   However, Sanfer
does not dispute that it did not obtain a title to the vehicle in Green's name reflecting its "lien" for the
unpaid balance until August 14, 2007.   Thus, as of the point when Green began making payments, Sanfer
effectively was "financing the deal," *id.* at 10, but without benefit of a secured ownership interest in the
vehicle.

Florida Department of Motor Vehicles on August 14, 2007, several weeks after seizure

by the DEA of the Defendant Vehicle in Buffalo on July 18, 2007, Plaintiff's Memorandum

at 1; Knapp Affidavit ¶ 2; Plaintiff's motion Attachment A, and five days after the DEA

provided notice to Sanfer of the seizure.  Knapp Affidavit ¶ 23.  Although, in its answer,

Sanfer stated that it "recorded a lien" on October 6, 2006 (Doc. No. 13 at 2), Sanfer

offers no evidence in opposition to Plaintiff's motion to contest that the Florida title to

Defendant Vehicle issued on August 14, 2007, establishing that under Florida law Sanfer

had prior to this date asserted a lien against the Defendant Vehicle, nor does Sanfer

point to any legal authority to demonstrate that, pursuant to Florida law, such issuance

established that Sanfer's lien was deemed perfected by issuance of the August 14, 2007

title, but effective October 16, 2006 when Green purchased the vehicle, and the court's

own research reveals none.

      This fact is confirmed by the information provided by Plaintiff, also undisputed by

Sanfer, that until title to the vehicle was transferred from its prior owner, Delgado, to

Green, by issuance of a title to Green, subject to Sanfer's lien, on August 14, 2007,

Plaintiff's motion Exh. A; Plaintiff's Reply Attachment A, title to the vehicle had remained

in Delgado's name although the title had been assigned to Sanfer.  Plaintiff's

Memorandum at 6; Sanfer Response at 10.  Thus, the lien Sanfer later filed with the

Florida Department of Motor Vehicles, well after the sale of the vehicle to Green on

October 16, 2006, could not have existed as an encumbrance against Green's title, by

operation of Florida law, as Green's title to the vehicle (and Sanfer's lien) were not

issued until  August 14, 2007, approximately three weeks after the vehicle had been

seized following its use by Turnage in narcotics trafficking in Buffalo, and five days after

the DEA served Sanfer with the notice of seizure (Plaintiff's motion Exh. 3, showing

original title date of August 19, 2004 to Delgado and the title transfer date of August 14,

2007 to Green); Plaintiff's Memorandum at 6.

General unsecured creditors lack standing to recover forfeited property.  *See*

*United States v. Schwimmer*, 968 F.2d 1570, 1580 (2d Cir. 1992).  Absent such standing

the district court lacks subject matter jurisdiction over the claim.  *One 1986 Volvo*, 765

F.Supp at 91.  It is basic that no property right continues to exist in any vehicle upon its

use to "transport" controlled substances or "to facilitate the transportation, sale, receipt,

possession or concealment of" a controlled substance, 21 U.S.C. § 881(a)(4), and that

all "right, title, and interest in property described in . . . [ § 881(a)]" . . . [vests] "in the

United States upon commission of the act giving rise to forfeiture under this section [ §

881]."  21 U.S.C. § 881(h) (bracketed material added).  *See also United States v. A*

*Parcel of Land, Buildings, Appurtenances and Improvements, Known as 92 Buena Vista*

*Avenue, Rumson, New Jersey,* 507 U.S. 111, 128-29 (1993) (claimant with colorable

ownership interest in real property at time forfeiture against property was initiated has

standing to assert innocent owner defense).  Thus, at the time of Defendant Vehicle's

seizure on July 18, 2007, Plaintiff obtained title to the vehicle by operation of law and

Sanfer's lien obtained thereafter could not create any property interest to the vehicle, and

is therefore legally insufficient as an ownership interest to confer standing under

§983(d)(6)(B)(i).  Sanfer does not dispute that the Defendant Vehicle was, prior to

seizure, used by Turnage in connection with a narcotics trafficking conspiracy and thus

subject to seizure and forfeiture.  Nor would any assertion of an ownership interest

based on the doctrine of an equitable ownership interest in the vehicle by Sanfer, a

ground not advanced by Sanfer, establish an ownership interest sufficient to provide standing or a basis for Sanfer's innocent ownership defense, Answer at 2, pursuant to §983(d), be sufficient.  *See United States v. 74.05 Acres of Land,* 428 F.Supp.2d 57, 65 (D.Conn. 2006) (equitable interests in property subject to forfeiture not within ownership interests as defined by 18 U.S.C. § 983(d)(6)).

It is well settled that a lien is a charge or hold by a creditor on a debtor's property to secure payment of a debt owed to the creditor by the debtor.  51 Am. Jur. 2d, Liens, § 1 (2000).  The notation on a certificate of title to an automobile of a lien or encumbrance to secure payment of a debt owed on the automobile operates as a notice to subsequent purchasers of the existence of such encumbrance.  7A Am. Jur. 2d, Automobiles and Highway Traffic, § 35 (1997).  Here, under the Florida statute, Sanfer's lien against the vehicle, which was intended to secure payment of the balance of the purchase price owed by Green to Sanfer, as an encumbrance on the vehicle, did not arise until August 14, 2007, and because Green's possessory or ownership interest in the vehicle had been terminated at the time of its seizure on July 19, 2007 by the DEA, Sanfer's lien could not encumber Green's interest in the vehicle, as there was at that time no such interest to encumber because all property interests in the vehicle were extinguished and had devolved to Plaintiff by operation of law pursuant to 21 U.S.C. § 881(h).  Thus, because Sanfer's assertion of a lien on August 14, 2007 could not encumber Plaintiff's plenary property rights in the vehicle at that time as Plaintiff was not Sanfer's debtor, and, as Green's interests in the vehicle had then been extinguished by operation of 21 U.S.C. § 881(h), the recorded lien was a legal nullity, and Sanfer suffered no compensable injury as a result of the seizure and later forfeiture in this action.

Although upon Delgado's trade-in of the vehicle, Sanfer had received, as required by Florida law, an assignment of Delgado's title it had not obtained title in its own name, despite the fact that it had retained such assignment.  Thereafter, based on the sale of Defendant Vehicle to Green, Sanfer transferred its ownership and possession of the vehicle to Green, and retained no ownership interest except for the possible creation of the lien by later applying for title under Florida law in Green's name.  Sanfer Response at 10 (after obtaining Delgado's title, Sanfer "sold" the vehicle to Green).  Accordingly, as Sanfer had sold the vehicle to Green on October 18, 2006, it acquired no ownership interest in the vehicle based on its belated and ineffective attempt to assert a lien with which the seizure interfered, Sanfer suffered no economic loss resulting from the seizure, and no case or controversy between Plaintiff and Sanfer arose based on the seizure of Defendant Vehicle.  Sanfer therefore lacks Article III standing as a claimant in this action.  *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (to contest forfeiture claimant must establish standing under forfeiture statute and Article III of the Constitution) (citing cases).  Any loss on the vehicle sale to Green incurred by Sanfer therefore results not from the seizure, but from Sanfer's decision to delay in titling the vehicle to Green subject to Sanfer's lien.  *See Cambio Exacto, S.A.*, 166 F.3d at 527 (injury necessary for Article III standing must be "direct result" of the asserted illegality).

Here, because Sanfer had no ownership interest, as required by § 983(d)(6)(B)(i) either as the owner, *i.e.*, titleholder, of Defendant Vehicle or as a *bona fide* lienholder established by Florida law, against the Defendant Vehicle prior to the seizure, and Plaintiff's resultant acquisition of all title and interest in the vehicle arising from its use in facilitating narcotics trafficking, Sanfer lacks statutory standing to assert its claim, and its

claim is subject to being stricken as lacking any basis upon which this court may exercise subject matter jurisdiction over the claim. *$79,000 in Account Number 2168050/674990*, 1996 WL 648934 *2-3 (courts may strike insufficient defense based on claimant's lack of statutory or Article III standing) (citing cases).  Accordingly, Sanfer's claim should be struck and judgment entered on behalf of Plaintiff pursuant to Rule G(8)(c)(ii)(B) (motion to dismiss claim for lack of standing treated as motion for judgment on pleadings or for summary judgment).  As such, the court need not address Plaintiff's contention that Plaintiff's ownership of Defendant Vehicle accrued at the time it was transferred to Green and possessed by Turnage in violation of 31 U.S.C. § 3513(a) and 18 U.S.C. § 1956, or based on Green's acquisition using the proceeds of Turnage's earlier narcotics activities.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 20) should be GRANTED, and a judgment of forfeiture entered against the Defendant Vehicle.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: March 5, 2009
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of service of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension**

**of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,*

474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d

Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for

the Plaintiff and the Defendant/Claimant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 5, 2009
                 Buffalo, New York